UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES GEORGE | CIVIL ACTION |
| VERSUS | NO. 24-2528 |
| HOBBY LOBBY STORES, INC. | SECTION M (4) |

### ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant Hobby Lobby Stores, Inc. ("Hobby Lobby").[1] Plaintiff Charles George, by and through his limited curatrix, Karen Meyer ("George"), responds in opposition,[2] and Hobby Lobby replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying it in part.

### I. BACKGROUND

This case concerns claims of disability discrimination. George is a 66-year-old man with intellectual disabilities, who reads at a third-grade level and has speech impediments and facial tics.[4] He has been under a limited interdiction since 2019, because he is unable to care for himself without substantial assistance as he cannot drive, keep a regular schedule, manage his finances or healthcare, buy groceries, clean, or cook.[5] His sister, Meyer, is his curatrix.[6] Under the interdiction, George lacks the legal capacity to make any decisions regarding any aspect of his

---

[1] R. Doc. 11.
[2] R. Doc. 14.
[3] R. Doc. 15.
[4] R. Doc. 9 at 1-2.
[5] *Id.*
[6] *Id.* at 1, 3.

property and the following aspects of his person: healthcare, medical treatment, place of residence, and living arrangements.[7] The interdiction also established a special-needs trust for George's benefit that is funded by family members.[8] Meyer provides George with a $100 weekly allowance from the trust.[9]

For the past ten years, George has shopped at the Hobby Lobby store in Harahan, Louisiana.[10] He usually spent his entire $100 weekly allowance at the store.[11] George alleges that, over the course of this decade-long interaction, the store's employees welcomed him and accommodated his disability.[12] For example, George claims that the cashiers would accommodate his inability to do basic math by adding up the cost of the items he wished to purchase to determine if he had enough money to pay for them.[13] However, according to George, one employee, Heather Ford, harbored animus towards him and believed that his disabilities should not be accommodated.[14] George alleges that, when Ford became store manager in June 2023, she refused to allow the cashiers to help him tally his items, believing that it was a waste of their time.[15]

On November 27, 2023, George asked a cashier to tally the cost of certain items and said that he would return later in the day when he had the money to pay.[16] George alleges that Ford told him he could not do that because the "cashiers are wasting time on" him and that if he continued to ask for help she was going to call the police.[17] Ford also supposedly stated that she

---

[7] *Id.* at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 4.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 4-5.
[16] *Id.* at 5.
[17] *Id.*

wanted George "to stay out of this store and off of the property never to come back."[18] George claims then when he asked why, Ford called the police.[19] George walked outside, but remembered that he left some of his personal items, including his keys, inside the store, so he attempted to return to the store to retrieve them, but Ford stopped him.[20] George and Ford were arguing when Deputy Aleia Pearson of the Jefferson Parish Sheriff's Office arrived.[21] Pearson told George to walk outside, which he did.[22] Ford then told Pearson that she, as store manager, would not allow the cashiers to tally the items for George and she wanted him charged with trespassing.[23] George called his other sister, Kimberly George ("Kimberly"), who also served as his undercuratrix, to pick him up.[24] While George was on the phone with Kimberly, Pearson told him he needed to get his things and leave, but George misunderstood and told Kimberly that he was going to jail.[25] At some point thereafter, George attempted to return to the store to get his belongings.[26] Pearson grabbed George's jacket and pulled him back.[27] George, believing that he was being attacked, turned around with his fists in the air saying, "No! No!"[28] Kimberly arrived and tried to intervene.[29] George, not understanding what was happening, advanced towards Pearson, who then pepper sprayed George, Kimberly, and Kimberly's partner.[30] When more deputies arrived, Ford complained that George was a loiterer and stated again that she would no longer allow the cashiers

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 6.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 7.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 8.

to accommodate George by tallying his items.[31] George was arrested for "resisting arrest."[32] A criminal case ensued, but was eventually dismissed by the court when George was deemed irrestorably incompetent to stand trial.[33] George has been banned from the Hobby Lobby store, but would return if allowed to do so.[34]

George filed this case against Hobby Lobby alleging claims of disability discrimination under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and the Louisiana Human Rights Act ("LHRA"), La. R.S. 51:2247, for Hobby Lobby's failure to reasonably accommodate his disability by refusing to continue to tally the items he wished to purchase.[35] He also alleges a negligence claim.[36] George seeks a declaration that Hobby Lobby violated the cited federal and state disability discrimination laws.[37] He also seeks monetary damages under Louisiana law, an injunction against Hobby Lobby, and attorney's fees.[38]

## II. PENDING MOTION

Hobby Lobby moves to dismiss pursuant to Rule 12(b)(6), arguing that George's complaint is a "shotgun pleading" that contains vague allegations that do not give Hobby Lobby notice of the claims against it.[39] Hobby Lobby also argues that George fails to state a negligence claim because he does not cite a Louisiana Civil Code article or statute providing a cause of action and does not allege facts sufficient to support a negligence claim.[40] Next, Hobby Lobby contends that George's ADA claim should be dismissed because the statute's remedies are limited to injunctive relief and

---

[31] *Id.*
[32] *Id.* at 9.
[33] *Id.* at 9-10.
[34] *Id.* at 10.
[35] *Id.* at 10-11.
[36] *Id.* at 11.
[37] *Id.* at 12.
[38] *Id.*
[39] R. Doc. 11-1 at 3, 10-11.
[40] *Id.* at 3, 12-13.

4

attorney's fees and George cannot satisfy the elements necessary to obtain a permanent injunction as he cannot show that he suffered an irreparable injury from Hobby Lobby's alleged failure to comply with the ADA.[41] Hobby Lobby further contends that George failed to allege sufficient facts to state claims under the ADA and Louisiana disability discrimination law because he did not show that he was denied the opportunity to seek services, purchase goods, or otherwise utilize Hobby Lobby's store due to his disability.[42] Rather, according to Hobby Lobby, he alleged that the manager asked him to leave when he could not pay.[43] Finally, Hobby Lobby also argues that George should not be granted leave to amend the complaint because he already filed one amended complaint that did not cure the pleading deficiencies in his first complaint.[44]

In opposition, George argues that his complaint is not rambling, vague, or "shotgun" style, but rather straightforwardly alleges that Hobby Lobby, a store at which he was a paying customer for ten years, reasonably accommodated his intellectual disability by tallying the items he wished to purchase and then, when Ford became the store manager, she stopped the practice and called the police on George, in violation of the ADA and Louisiana state law.[45] George also contends that he has standing to bring an ADA claim for injunctive relief because he would go back to the store if he could, and Louisiana law provides for compensatory damages.[46] Further, George argues that he does not need to show irreparable harm to obtain injunctive relief under the ADA, and Hobby Lobby, at Ford's direction, denied him a reasonable accommodation (tallying his items) that prevented him from being able to purchase goods at the store.[47] George points out that he in

---

[41] *Id.* at 3, 13-16.
[42] *Id.* at 16-18.
[43] *Id.* at 17.
[44] *Id.* at 3, 18-19. Hobby Lobby filed a motion to dismiss the original complaint. R. Doc. 8 (citing R. Doc. 1). George then filed an amended complaint. R. Doc. 9. As a result, this Court dismissed as moot Hobby Lobby's first motion to dismiss because it was no longer directed at the operative complaint. R. Doc. 10.
[45] R. Doc. 14 at 1, 17.
[46] *Id.* at 2-4, 12.
[47] *Id.* at 5-10.

fact alleges that Hobby Lobby, particularly Ford, kicked him out of the store and called the police because of his intellectual disability.[48] Finally, George argues that he stated a negligence *per se* claim against Hobby Lobby premised on its violation of the ADA and Louisiana law.[49]

Hobby Lobby replies, reiterating its argument that George's complaint does not satisfy Rule 8(a) as it fails to put Hobby Lobby on notice of George's claims against it.[50] Hobby Lobby further argues that George did not adequately allege the elements of claims under Title III of the ADA or the LHRA.[51] Also, says Hobby Lobby, George did not adequately allege a negligence claim and Louisiana law does not recognize a claim for negligence *per se*.[52] Finally, Hobby Lobby points out that George did not present any arguments refuting its position concerning the futility of another amended complaint and, regardless, did not seek leave to amend.[53]

### III.    LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[48] *Id.* at 10-12.
[49] *Id.* at 12-17.
[50] R. Doc. 15 at 3-4.
[51] *Id.* at 4-5.
[52] *Id.* at 5-7.
[53] *Id.* at 2.

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

7

likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

#### 1. Disability Discrimination under the ADA (First Claim)

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA defines discrimination to include –

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

*Id.* § 12182(b)(2)(A)(ii). Thus, to state a claim under Title III of the ADA, a plaintiff must plead: (1) that he has a disability; (2) that the place the defendant owns, leases, or operates is a place of public accommodation; and (3) that he was denied full and equal enjoyment because of his disability. *Castaneda v. Planet Fitness, Inc.*, 2024 WL 4182926, at *4 (W.D. Tex. Sept. 12, 2024). "Damages are not available for a Title III ADA claim brought by a private party, but a private party may seek injunctive relief."[54] *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015). Also, "[t]he ADA authorizes the court, in its discretion, to award attorney's fees to the prevailing party but does not specify when such an award is appropriate." *Deutsh v. Jesus Becerra, Inc.*, 668 F. App'x 569, 570 (5th Cir. 2016) (citing 42 U.S.C. § 12205).

Standing to seek injunctive relief under Title III of the ADA requires a plaintiff to show that he currently "suffer[s] or will suffer an injury-in-fact, and therefore would benefit from the court's granting of such equitable relief." *Perez*, 624 F. App'x at 183. The present or future harm must be palpable, not "conjectural or hypothetical." *Id.* (quotation omitted). Although allegations of "past wrongs alone do not amount to that real and immediate threat of injury necessary to make out a case or controversy," they "can be considered … as evidence of an actual threat of repeated injury." *Id.* (quotation and internal citation omitted).

The parties dispute whether George needs to show that he can satisfy the elements ordinarily required for a permanent injunction – namely, irreparable harm, that monetary damages

---

[54] George concedes this point. R. Doc. 14 at 2. Nevertheless, to the extent that the complaint can be read to assert a claim for damages, whether compensatory or punitive, under Title III of the ADA, that claim is DISMISSED.

9

are inadequate to compensate for the injury, a balancing of the hardships between the plaintiff and defendant, and that the public interest would not be disserved by a permanent injunction.[55] The Court need not resolve the conflict at this juncture, because George has alleged sufficient facts to state a Title III ADA claim and he has standing to pursue it. It is undisputed that George has a disability, and that Hobby Lobby is a place of public accommodation. And George has alleged that Hobby Lobby, through Ford, discriminated against him because of his intellectual disability by refusing to provide an allegedly reasonable accommodation (tallying items) that it had provided to him in the past. Further, George has alleged that he would return to Hobby Lobby's store if he could, which is sufficient for standing. *See Smith v. France*, 850 F. App'x 243, 247 (5th Cir. 2021) (holding that plaintiff had standing to pursue a Title III ADA claim when she visited the Superdome ten to fifteen times in her lifetime and had plans to return if able). Thus, the Court finds that George has stated a Title III ADA claim.

### 2. Disability Discrimination under the LHRA (Second Claim)

The LHRA states that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in this Chapter, on the grounds of … disability." La. R.S. 51:2247. "Disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual, a record of such impairment, or being regarded as having such an impairment." *Id*. 51:2232(3)(a). And "'mental impairment' means any mental or psychological disorder, such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning

---

[55] *Compare* R. Doc. 11-1 at 15-16 (reflecting that Hobby Lobby argues that George cannot demonstrate the elements of a permanent injunction), *with* R. Doc. 14 at 5 (reflecting that George argues that the standard requirements for equitable relief need not be satisfied when Congress has expressly provided for an injunction by statute).

disabilities." *Id.* 51:2232(3)(a)(ii).  The LHRA provides to any person injured by a violation of the act a civil cause of action to enjoin further violations and recover actual damages.  *Id.* 51:2264.

Here, George has alleged that he is mentally impaired as defined by the LHRA and that Hobby Lobby discriminated against him because of that disability, preventing him from equal enjoyment of Hobby Lobby's goods.  This is enough to state a claim under the LHRA.

### 3. Negligence (Third Claim)

George argues that Hobby Lobby is liable under the doctrine of negligence *per se*.[56] However, Louisiana law "does not recognize the negligence *per se* doctrine." *Pellerin v. Foster Farms, L.L.C.*, 354 So. 3d 790, 797 (La. App. 2023) (citing *Ducote v. Boleware*, 216 So. 3d 934 (La. App. 2016)).  "Louisiana courts have noted that the violation of a statute or regulation does not automatically, in and of itself, impose civil liability, as Louisiana has no negligence *per se* doctrine."  *Id.* (citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289 (La. 1993)). Instead, "[c]ivil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another."  *Id.*  "Accordingly, courts must conduct a duty/risk analysis."  *Id.* (citing *BellSouth Telecomms., Inc. v. Bennett Motor Exp., L.L.C.*, 131 So. 3d 236 (La. App. 2013)).  To prevail under the duty-risk analysis, a plaintiff must prove the following elements: (1) the defendant had a duty to conform his or her conduct to a specific standard (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach-of-duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope-of-liability or scope-of-protection element); and (5) actual damages (the damages element).  *Jenkins v. Hernandez*, 305 So. 3d 365, 371 (La. App. 2020).

---

[56] R. Doc. 14 at 12-13.

George has alleged that Hobby Lobby had a duty to comply with the ADA and LHRA and failed to do so. He also alleges that the failure caused him to sustain injuries, specifically, being arrested, pepper sprayed, and prosecuted, as well as emotional trauma, which caused him damage. At this stage, the Court cannot say that Hobby Lobby's actions were not the cause-in-fact or legal cause of plaintiff's damages. George's negligence claim must at least be vetted through the discovery process.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Hobby Lobby's motion to dismiss (R. Doc. 11) is GRANTED as to any claim for monetary damages, other than attorney's fees, under the ADA. The motion is otherwise DENIED.

New Orleans, Louisiana, this 6th day of March, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE