UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES GEORGE                                    CIVIL ACTION

VERSUS                                            NO. 24-2528

HOBBY LOBBY STORES, INC.                          SECTION M (4)

**ORDER & REASONS**

Before the Court is a renewed motion for judgment as a matter of law and alternative

motion for new trial and/or to amend the judgment filed by defendant Hobby Lobby Stores, Inc.

("Hobby Lobby").[1]  Plaintiff Charles George, by and through his limited curatrix, Karen Meyer

("George"), responds in opposition,[2] and Hobby Lobby replies in further support of its motion.[3]

Having considered the parties' memoranda, the record, and the applicable law, the Court issues

this Order & Reasons denying the motion.

## I.    BACKGROUND[4]

This case concerns claims of disability discrimination.  George is a 68-year-old man with

intellectual disabilities.  After their parents passed away, George's surviving sisters petitioned the

Louisiana state court for a full interdiction so that they could care for him.  The state court partially

granted the petition in 2019 and placed George under a limited interdiction, with his sister, Karen

Meyer, acting as his curatrix and his other sister, Kimberly George, acting as the undercuratrix.

George lives independently, more or less, with his sisters managing his finances, healthcare, and

---

[1] R. Doc. 130.
[2] R. Doc. 140.
[3] R. Doc. 141.
[4] The background facts are derived from the evidence presented at trial.

living arrangements.  George receives a $100 weekly allowance from a special needs trust that was established as part of the limited interdiction.

For ten years prior to the incident that gave rise to this case, George shopped at the Hobby Lobby store in Harahan, Louisiana, where he usually spent a portion of his weekly allowance. George went to the store often (usually multiple days each week), including on days when he did not have money to spend.  George would fill his shopping cart with items and the store's employees would accommodate his inability to do basic math by adding up the cost of the items, even if George did not have any money to buy them.

On the morning of November 27, 2023, the Monday after Thanksgiving, George went to the Harahan Hobby Lobby.  He did not have any money, because he received his weekly allowance on Monday afternoons.  At the store, George gathered several items, and without waiting in the long holiday lines, asked an employee, who was not cashier, to tally the cost.  The store was very busy and the relatively-new store manager, Heather Ford, got involved.  Ford told George that the employees did not have time to help him at that moment and asked him to come back later.  George swore at Ford.  She then told George that he would have to leave the store or she would call the police.  When George turned away and began walking towards the back of the store, the manager called the police.  George eventually returned to the front of the store and had another verbal altercation with the store manager in the lobby as he was leaving.  A Jefferson Parish Sheriff's Deputy then arrived and interacted with George outside of the store.  After several minutes of question-and-answer, George threatened the deputy with his cane, later took a fighting stance, and advanced on her when she tried to prevent him from re-entering the store, whereupon, after several warnings, she pepper-sprayed him.  George was arrested and spent a night in jail.  The ensuing

2

criminal charges were dropped when the state court judge determined that George was incompetent to stand trial.  Hobby Lobby banned George from the store.

George filed this suit against Hobby Lobby alleging claims of disability discrimination under Title III of the Americans with Disabilities Act ("ADA") and the Louisiana Human Rights Act ("LHRA") for Hobby Lobby's failure to reasonably accommodate his disability by refusing to continue to tally the items he wished to purchase and for treating him less favorably than nondisabled patrons.  The parties filed several pretrial motions *in limine*.  Relevant to the motion presently before the Court, George moved to exclude evidence of three unrelated altercations that occurred in 2009, 2012, and 2014.[5]  Two of the incidents involved George's family members (2009 and 2014), and the third concerned George allegedly attacking a Party City employee after he was asked to leave the store (2012).[6]  The Court initially denied George's motion, finding that the evidence of his prior bad acts was relevant to Hobby Lobby's comparative-fault defense and that the probative value of the evidence was not outweighed by the danger of unfair prejudice.[7]  However, upon George's motion to reconsider, the Court decided to exclude the evidence, finding that the incidents were remote in time and not factually similar to the events at issue in this case.[8]  The Court was persuaded by the fact that two of the incidents concerned George's interactions with family members and the one at Party City, which predated the subject incident by eleven years, involved George hitting the employee, which did not occur here.[9]  Moreover, George had visited Hobby Lobby for more than ten years without an issue, which vitiated the probative value of the Party City incident.[10]  The Court further reasoned that George's status as a limited interdict

---

[5] R. Doc. 65.
[6] R. Doc. 65-1 at 1.
[7] R. Doc. 80.
[8] R. Doc. 116 at 3-4.
[9] *Id.* at 3.
[10] *Id.*

and the facts underlying the petition for interdiction were irrelevant to the issue of whether Hobby

Lobby knew he had an intellectual disability that required accommodation and that Hobby Lobby

could advance its comparative-fault argument using the order of interdiction, without reference to

the 2009, 2012, and 2014 incidents.[11]

George's LHRA claims were tried before a jury from March 16, 2026, through March 20,

2026.[12]  During the trial, Hobby Lobby argued to the Court out of the presence of the jury that

Meyer's and Kimberly George's testimony – particularly, their testimony that George was non-

confrontational – opened the door to the introduction of the aforementioned evidence.  The Court

denied Hobby Lobby's request to use the evidence, based on the rationale of its pretrial ruling.

Hobby Lobby then offered the evidence as a proffer, again out of the jury's presence.  The jury

found in favor of Hobby Lobby on George's failure-to-accommodate claim, but in favor of George

on his claim that Hobby Lobby treated him less favorably than nondisabled patrons, awarding him

$10,000 in damages.

## II.    LAW & ANALYSIS

### A.  Hobby Lobby's Motion for Judgment as a Matter of Law

At the close of George's evidence at trial, Hobby Lobby moved for a judgment as a matter

of law pursuant to Rule 50(a).[13]  The Court orally denied the motion.[14]  Hobby Lobby now renews

its motion under Rule 50(b), arguing that George failed to prove (1) that he was treated less

---

[11] *Id.*

[12] R. Docs. 120; 122; 123; 124; 125.  Because injunctive relief and the recovery of attorney's fees and costs are the only remedies available under Title III of the ADA, there is no right to a jury trial on such claims.  *Cayette v. PNK (Baton Rouge) P'ship*, 2016 WL 3579028, at *7 (M.D. La. May 19, 2016), *adopted*, 2016 WL 3582082 (M.D. La. June 28, 2016).

[13] R. Doc. 124.

[14] *Id.*

favorably than nondisabled patrons, and (2) that he suffered actual damages caused by Hobby Lobby.[15]

In ruling on a Rule 50(b) motion, a "court may: (1) allow judgment on the verdict, if the jury returned a verdict; (b) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).  Judgment as a matter of law on an issue is appropriate when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  When evaluating a Rule 50(b) motion, courts "consider all of the evidence drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."  *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022) (quotation omitted).  "Thus, a Rule 50 motion must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."  *Id.* (quotation omitted).

### 1.  Disparate Treatment

Hobby Lobby argues that a judgment as a matter of law in its favor is warranted because George failed to prove that Hobby Lobby treated him differently than nondisabled patrons.[16]  Hobby Lobby contends that only Ford testified truthfully about what happened during her interaction with George, why she asked him to leave the store, and why she called the police.[17]  Hobby Lobby says that Ford's testimony on these topics was unrebutted because Geroge did not testify at trial; his sisters and friend, James Van Kanegon, were not inside the store with him at the time of the incident; and the Hobby Lobby employees who testified on his behalf were unreliable and untruthful.[18]  Thus, argues Hobby Lobby, the jury erred by discrediting Ford's testimony that her motivation for asking

---

[15] R. Doc. 130.
[16] R. Doc. 130-1 at 2, 5-11.
[17] *Id.* at 5-6.
[18] *Id.* at 5, 8.

George to leave and calling the police was his unacceptable behavior – specifically, his cursing at her and refusing to leave the store when asked to do so – and not his disability.[19]  Hobby Lobby further asserts that George failed to prove that he was treated less favorably than nondisabled individuals because he did not introduce evidence of a proper comparator – specifically, a nondisabled person who cursed at the store manager and was allowed to remain in the store – nor did George prove that Ford had a discriminatory animus for asking him to leave or calling the police.[20]

In opposition, George argues that he rebutted Ford's account of the incident with the testimony of other Hobby Lobby employees who witnessed the event and that the jury could rationally conclude that Hobby Lobby discriminated against him because of his disability.[21]  George contends that he could, and did, prove discrimination in a myriad of ways, not just with comparators.[22]  Thus, George advocates that disability discrimination can be, and was, proved by showing that: an adverse action was taken because an accommodation was requested; a disability was regarded as a negative factor in decision-making; and the discriminatory preferences of other patrons were prioritized over the disabled individual.[23]  George further argues that, regardless of his cursing at Ford, he proved that his disability, at least in part, motivated her decision to ask him to leave the store and call the police and that her credibility was undermined.[24]  Moreover, says George, the record shows that Hobby Lobby treated him less favorably than other nondisabled patrons who committed crimes within the store.[25]  George also contends that Hobby Lobby deviated

---

[19] *Id.* at 7.
[20] *Id.* at 8-11.
[21] R. Doc. 140 at 2-3.
[22] *Id.* at 4-14.
[23] *Id.* at 4-5.
[24] *Id.* at 5-8, 10-12.
[25] *Id.* at 8-10.

from its normal practice when the police were called and that its lack of training on disabilities evinces discriminatory motive.[26]

Hobby Lobby replies, arguing that George relies upon evidence that the jury rejected – namely, evidence that would have gone toward his failure-to-accommodate claim.[27]  Hobby Lobby also argues that the trial record does not support George's theory of discrimination because Hobby Lobby employees testified that they heard him screaming at Ford, which, in its view, supports its assertion that Ford called the police because of George's actions, not because of his disability or with a discriminatory goal in mind.[28]  Hobby Lobby reasserts that George did not come forward with proper comparators, nor did he show that Hobby Lobby deviated from its standard procedure by calling the police.[29]  Indeed, says Hobby Lobby, it followed procedure by calling the police when George committed the crime of trespassing, *i.e.*, remaining in the store after Ford asked him to leave.[30]  Finally, Hobby Lobby contends that George has no evidence that Ford prioritized the discriminatory preferences of other customers.[31]

The LHRA provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation … on the grounds of … disability." La. R.S. 51:2247.  A "[d]iscriminatory practice in connection with public accommodations" includes any "practice of differentiation or preference in the treatment of a person … because of … disability." La. R.S. 51:2232(5).  Considering the record as a whole and drawing all reasonable inferences and resolving all credibility determinations in George's favor, the Court cannot say that the facts and

---

[26] *Id.* at 12-13.
[27] R. Doc. 141 at 1-3.
[28] *Id.* at 3-5.
[29] *Id.* at 4.
[30] *Id.*
[31] *Id.* at 5.

inferences point so strongly and overwhelmingly in Hobby Lobby's favor that reasonable jurors could not find Hobby Lobby liable under the LHRA for treating George differently due to his disability.  As George argues, there was enough evidence presented at trial to show that Hobby Lobby was motivated, at least in part, by some discriminatory animus when Ford called the police to address the situation with George.  Therefore, Hobby Lobby's Rule 50(b) motion must be denied.

### 2.  Damages

Hobby Lobby also argues that it is entitled to judgment as a matter of law in its favor because George offered no evidence that he suffered any actual damages that were caused by Hobby Lobby.[32]  Hobby Lobby contends that George failed to prove damages because he did not testify at trial nor did he offer any expert or treating physician testimony to explain how the incident affected him.[33]  Further, Hobby Lobby maintains that there is no evidence that it caused George's supposed damages as George did not prove that it was foreseeable that he would be pepper-sprayed, arrested, and prosecuted when Ford called the police.[34]  Hobby Lobby instead attributes any damages to George's own behavior with the deputy and his sisters' decision to leave him in jail overnight.[35]

In opposition, George argues that he sufficiently proved damages caused by Hobby Lobby's actions.[36]  George contends that he did not need to testify or present expert witnesses to prove damages because his distress was evident in the video footage shown at trial and was described by his sister Kimberly George and her significant other, Van Kanegon.[37]  He points out that the jury instructions on damages state that there is no need to introduce evidence of intangibles,

---

[32] R. Doc. 130-1 at 11-15.
[33] *Id.* at 11-12.
[34] *Id.* at 12-15.
[35] *Id.* at 14-15.
[36] R. Doc. 140 at 14-17.
[37] *Id.* at 16.

such as mental or physical pain and suffering.[38]  George further argues that he adequately proved that Hobby Lobby caused his damages because it inflicted emotional distress on him by kicking him out of, and banning him from, his favorite store; thus, he would have been damaged even if the police had not been called.[39]  Moreover, says George, Hobby Lobby should have known that calling the police on someone would occasion distress and could result in criminal consequences, especially for a person with an intellectual disability.[40]

Hobby Lobby replies, pressing its argument that, at trial, George did not introduce any evidence of his actual damages or causation.[41]  Hobby Lobby contends that George cannot rely on his sister's and friend's statements that he was damaged by being banned from his favorite store because the jury heard no evidence from George regarding how the ban hurt him and because George can continue to visit other stores.[42]  Hobby Lobby also argues that George cannot rely on the bodycam video supposedly showing his distress because he never sought medical treatment for any such emotional distress.[43]  Moreover, says Hobby Lobby, George has not proved that Hobby Lobby caused his damages, which it reiterates were caused by George's own behavior with the sheriff's deputy and his sisters' decision to leave him in jail overnight.[44]  Further, Hobby Lobby argues that George's arrest-related damages were not foreseeable because Ford called the police to deescalate the situation and could not have known that George would become violent or that his sisters would leave him in jail for the night.[45]  And again, Hobby Lobby contends that George is

---

[38] *Id.* at 17.
[39] *Id.* at 17-18.
[40] *Id.* at 18.
[41] R. Doc. 141 at 6-9.
[42] *Id.* at 7.
[43] *Id.*
[44] *Id.* at 7-8.
[45] *Id.* at 8-9.

inappropriately relying on evidence of the alleged failure to accommodate to justify the damages award.[46]

Considering all of the evidence in the light most favorable to George, the Court finds that the jury could reasonably have found that George proved causation and damages. He at least showed that Hobby Lobby caused him damage by first expelling and then banning him from the store. Kimberly George testified that George visited Hobby Lobby nearly every day and that he often spent a portion of his weekly allowance at the store. Going to Hobby Lobby was a part of George's daily routine for years. The bodycam video showed that George was visibly distressed upon being forced to leave the store. Kimberly George and Meyer also testified that George acted differently after the incident and being banned from Hobby Lobby. Further, the jury could have reasonably found that George suffered some emotional distress damage caused by Hobby Lobby's decision to call the police, even disregarding his ensuing altercation with the deputy. The bodycam video showed that George was agitated by the initial encounter and interaction with the deputy. In sum, the Court will not, on a post-trial motion, disturb the jury's verdict on damages, which is supported by sufficient evidence.

## B. Hobby Lobby's Motion for New Trial

Hobby Lobby also moves for a new trial or, alternatively, remittitur, pursuant to Rule 59.[47] "After a jury trial, Rule 59 of the Federal Rules of Civil Procedure authorizes courts to grant motions for new trial for any reason for which a new trial has heretofore been granted in an action at law in federal court." *Wantou*, 23 F.4th at 431. Those reasons include "if the trial court finds that the verdict is against the weight of evidence; the damages awarded are excessive; the trial was unfair; or prejudicial error was committed." *Adams v. Ethyl Corp.*, 838 F. App'x 822, 827 (5th

---

[46] *Id.* at 9.
[47] R. Doc. 130 at 16-18.

10

Cir. 2020). "Notwithstanding the broad sweep of Rule 59, courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Gen. Access Sols., Ltd. v. T-Mobile USA, Inc.*, 2026 WL 823162, at *1 (E.D. Tex. Mar. 25, 2026) (quotation omitted). In other words, "a new trial is warranted only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 180 (5th Cir. 2005).

Hobby Lobby argues that a new trial is warranted because "the Court committed prejudicial error" by excluding evidence that George exhibited violence against others on three prior occasions – which Hobby Lobby claimed before trial was relevant to its comparative-default defense. The Court had excluded the evidence due to its remoteness in time (concerning, as it did, incidents over ten years old) and character (lack of similarity to the subject incident).[48] Hobby Lobby contends that George's sisters "testified inconsistently with their knowledge of and involvement in the prior incidents and opened the door for Hobby Lobby to introduce [the] evidence."[49] Hobby Lobby points to Kimberly George's testimony that George "never really causes problems," that she was not aware of any prior instances where he was asked to leave a retail store, and that she expected arrests to occur when the police are called.[50] Hobby Lobby also cites Meyer's testimony that George was friendly when they were growing up and that interactions with him have not been confrontational.[51] According to Hobby Lobby, had the evidence of the prior incidents been admitted, it would have impeached the credibility of Meyer and Kimberly George, which could

---

[48] R. Doc. 130-1 at 2, 15-19 (quote at 2).
[49] *Id.* at 3, 15-19 (quote at 3).
[50] *Id.* at 17.
[51] *Id.*

have resulted in the jury finding in Hobby Lobby's favor.[52]  Further, Hobby Lobby posits that if it could have used the evidence, plaintiff's counsel could not have argued in closing that Hobby Lobby knew George would be arrested when Ford called the police because Ms. George knew he had not been arrested when she called the police during one of the prior incidents.[53]

In opposition, George argues that neither of his sisters' testimony opened the door to the admission of the prior bad acts evidence.[54]  First, George argues that Kimberly George did not testify that someone is always arrested when the police are called, but rather, only that an arrest is possible since the police sometimes allow the subjects to leave.[55]  Next, he contends that Meyer testified that he was friendly "growing up," which would have been in the 1960s and 1970s, not around the time of the prior incidents.[56]  Further, George argues that, while Meyer may have been "vaguely aware of [the three] incidents," it cannot be said that three incidents in 68 years is a reasonable basis to characterize his overall behavior as confrontational.[57]  Finally, George contends that even if his sisters opened the door, the Court was within its discretion to exclude the prior bad acts evidence because its potential for prejudice greatly outweighed its probative value.[58] He asserts that, given the other evidence admitted at trial, there is no indication that the evidence of the three prior incidents would have caused the jury to completely discredit his sisters' testimony and find in Hobby Lobby's favor.[59]

Hobby Lobby replies, reasserting that it was prejudiced by the exclusion of the evidence showing that George had been violent on these other occasions.[60]  Hobby Lobby further contends

---

[52] *Id.*
[53] *Id.* at 18.
[54] R. Doc. 140 at 19-22.
[55] *Id.* at 19.
[56] *Id.* at 19-20.
[57] *Id.* at 20.
[58] *Id.* at 20-22.
[59] *Id.*
[60] R. Doc. 141 at 2, 9-10.

that George has not shown how he would have been prejudiced by the introduction of such evidence, especially since his sisters relied upon it in petitioning the state court for his interdiction.[61] Hobby Lobby insists that, because the sisters did not believe the incidents were not too old to be relevant in the interdiction, these same incidents should not have been too remote to be relevant in the trial of this matter.[62] Hobby Lobby then repeats that the evidence was crucial to its ability to impeach George's sisters, and its exclusion undoubtedly affected the outcome of the case.[63]

This is the third time the issue of George's prior acts has been presented to the Court by written motion. As it did once before trial and at trial, the Court again finds that the incidents were too remote in time and character to be relevant to the issues presented in this case. The Court explained in its last Order & Reasons on this topic and in a sidebar at trial that the evidence is irrelevant and that any relevance is outweighed by undue prejudice. Hobby Lobby has not convincingly shown that the claimed inconsistent testimony was indeed contradicted by the evidence, much less how any "impeachment" value of the evidence would have changed the outcome of the case. Instead, what Hobby Lobby undoubtedly means is that, if the jury had heard that George was violent in the past, they would have been more likely to believe that he was violent toward Ford. This is an improper propensity purpose, and exactly why the evidence was excluded. Regardless, Hobby Lobby was able to point to the video of George's altercation with the deputy to urge this position, so it suffered no prejudice. Hobby Lobby is not entitled to a new trial based on the Court's exclusion of George's prior bad acts.

---

[61] *Id.*
[62] *Id.* at 9-10.
[63] *Id.* at 10.

13

### C. Hobby Lobby's Motion to Alter or Amend the Damages Award

In the alternative, Hobby Lobby argues that the damages award of $10,000 should be remitted to $3,077.50, which represents the legal fees George incurred in the criminal proceedings resulting from his arrest.[64]  Hobby Lobby contends that this is the only amount of damages George positively proved.[65]

In opposition, George argues that Hobby Lobby cannot meet its burden of showing that the damages award was excessive.[66]  George characterizes the $10,000 award as "modest" compensation for his being expelled and banned from the store, berated by the manager, and forced to encounter a police officer which subjected him to further berating, pepper spray, handcuffing, 24 hours in jail, and an ensuing criminal prosecution.[67]  George cites other disability cases in which the plaintiffs were awarded larger sums for emotional distress.[68]

Hobby Lobby replies, arguing that the award was excessive because the jury reported that it was hung after only 45 minutes of deliberation and then, after receiving an *Allen* charge, awarded $10,000 on one claim in response to George's request in closing arguments for an award of $450,000.[69]

A jury award is subject to remittitur when it "is excessive or so large as to appear contrary to right reason."  *Warner v. Talos ERT, L.L.C.*, 133 F.4th 412, 427 (5th Cir. 2025) (quotation omitted).  "To determine whether an award is excessive, courts generally compare it with rulings in other factually similar cases decided under controlling law."  *Id.* at 430 (quotation omitted).  Here, Louisiana law, specifically the LHRA, is the controlling law.  When evaluating remittitur,

---

[64] R Doc. 130-1 at 15.
[65] *Id.*
[66] R. Doc. 140 at 14-17.
[67] *Id.* at 14-15.
[68] *Id.* at 15-16.
[69] R. Doc. 141 at 1-2.

"Louisiana appellate courts consider 'prior awards in similar cases, as well as the particular facts and circumstances of the case under review.'" *Id.* (quoting *Pete v. Boland Marine & Mfg. Co.*, 379 So. 3d 636, 644 (La. 2023)).

The closest case cited by either party is *Smith v. Board of Commissioners of the Louisiana Stadium & Exposition District*, in which the district court, after a bench trial, found that the defendant, which operated a place of public accommodation, had violated the LHRA by discriminating against a disabled person. 385 F. Supp. 3d 491, 506-08 (E.D. La. 2019). The district court awarded $20,000 in compensatory damages for emotional distress. *Id.* at 508. The Fifth Circuit upheld the award, stating that its "review of the record reveals that the district court's monetary award was neither excessive nor an abuse of its discretion." *Smith v. France*, 850 F. App'x 243, 249 (5th Cir. 2021). Here, the jury awarded only $10,000 – half of the amount upheld in *Smith*. This Court cannot say that the award was excessive under the controlling law. Therefore, Hobby Lobby's motion for remittitur is denied.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Hobby Lobby's renewed motion for judgment as a matter of law and alternative motion for new trial and/or to amend the judgment (R. Doc. 130) is DENIED.

IT IS FURTHER ORDERED that the stay (R. Doc. 134) of the briefing schedule on George's motion for permanent injunction (R. Doc. 131) is hereby LIFTED, and the motion shall be submitted on the papers on **June 11, 2026**. Any opposition and reply memoranda shall be filed in accordance with the Local Rules.

New Orleans, Louisiana, this 14th day of May, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE