UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CHARLES GEORGE, by and through
his limited curatrix, Karen Meyer

VERSUS

HOBBY LOBBY STORES, INC.

CIVIL ACTION

NO. 24-2528

SECTION M (4)


**ORDER & REASONS**

Before the Court is the motion of plaintiff Charles George, by and through his limited curatrix, Karen Meyer ("George"), for attorney's fees.[1]  Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") responds in opposition,[2] and George replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons fixing the amount of attorney's fees awarded to George in the total amount of $128,375.

## I.   BACKGROUND[4]

This case concerns claims of disability discrimination.  George is a 68-year-old man with intellectual disabilities.  After their parents passed away, George's surviving sisters petitioned the Louisiana state court for a full interdiction so they could care for him.  The state court partially granted the petition in 2019 and placed George under a limited interdiction, with his sister, Karen Meyer, acting as his curatrix and his other sister, Kimberly George, acting as his undercuratrix. George lives independently, more or less, with his sisters managing his finances, healthcare, and

---

[1] R. Doc. 152.  The motion is supported by two attorney declarations (R. Docs. 152-3; 153-7), billing records (R. Doc. 153-4), and emails concerning offers of judgment (R. Docs. 153-5; 153-6), all attached to the motion.
[2] R. Doc. 160.
[3] R. Doc. 167.
[4] The background facts are derived from the evidence presented at trial.

living arrangements.  George receives a $100 weekly allowance from a special needs trust that was established as part of the limited interdiction.

For ten years prior to the incident that gave rise to this case, George shopped at the Hobby Lobby store in Harahan, Louisiana, where he usually spent a portion of his weekly allowance. George went to the store often (usually multiple days each week), including on days when he did not have money to spend.  George would fill his shopping cart with items and the store's employees would accommodate his inability to do basic math by adding up the cost of the items, even if George did not have any money to buy them.

On the morning of November 27, 2023, the Monday after Thanksgiving, George went to the Harahan Hobby Lobby.  He did not have any money, as he received his weekly allowance on Monday afternoons.  At the store, George gathered several items, and without waiting in the long holiday lines, asked an employee, who was not a cashier, to tally the cost.  The store was very busy and the relatively new store manager, Heather Ford, got involved.  Ford told George that the employees did not have time to help him at that moment and asked him to come back later.  George swore at Ford.  Ford then told George that he would have to leave the store, or she would call the police.  When George turned away and began walking towards the back of the store, Ford called the police.  George eventually returned to the front of the store and had another verbal altercation with the store manager in the lobby as he was leaving.  A Jefferson Parish Sheriff's Deputy then arrived and interacted with George outside of the store.  After several minutes of question-and-answer, George threatened the deputy with his cane, later took a fighting stance, and advanced on her when she tried to prevent him from re-entering the store, whereupon, after several warnings, she pepper-sprayed him.  George was arrested and spent a night in jail.  The resulting criminal

2

charges were dropped when the state-court judge determined that George was incompetent to stand trial.  Hobby Lobby banned George from the store.

George filed this suit against Hobby Lobby, alleging claims of disability discrimination under Title III of the Americans with Disabilities Act ("ADA") and the Louisiana Human Rights Act ("LHRA") for Hobby Lobby's failure to reasonably accommodate his disability by refusing to continue to tally the items he wished to purchase and for treating him less favorably than nondisabled patrons.[5]  George's LHRA claims were tried before the jury from March 16, 2026, through March 20, 2026.[6]  The jury found in favor of Hobby Lobby on George's failure-to-accommodate claim, but in favor of George on his claim that Hobby Lobby treated him less favorably than nondisabled patrons, awarding him $10,000 in damages.[7]  After trial, the Court issued a permanent injunction against Hobby Lobby requiring: (1) that George be allowed to return to the store, without any conditions; (2) that Hobby Lobby remove the "be on the lookout" bulletin concerning George placed in the break room of the Harahan store; and (3) that all customer-facing managers of the Harahan store undergo one hour of disability-related disparate treatment training within six months of the date the injunction was issued.[8]

## II.     LAW & ANALYSIS

### A.  George's Request for Attorney's Fees

George seeks to have the Court fix the amount of attorney's fees he is entitled to recover. George seeks $371,600, representing 929 hours of attorney work at a rate of $400 per hour.[9]

---

[5] R. Doc. 9.  George also brought a claim for negligence under Louisiana state law, *id.* at 11, which he dismissed shortly before the case was submitted to the jury.  R. Doc. 138 at 216-19.

[6] R. Docs. 120; 122; 123; 124; 125.  Because injunctive relief and the recovery of attorney's fees and costs are the only remedies available under Title III of the ADA, there is no right to a jury trial on such claims. *Cayette v. PNK (Baton Rouge) P'ship*, 2016 WL 3579028, at *7 (M.D. La. May 19, 2016), *adopted*, 2016 WL 3582082 (M.D. La. June 28, 2016).

[7] R. Doc. 126.

[8] R. Doc. 145.

[9] R. Doc. 152-1 at 1.

Hobby Lobby opposes the amount of fees requested by George, arguing broadly that the total amount is excessive since he prevailed on just one claim and was awarded only $10,000, he depends on unreasonable and unsupported hourly rates and hours expended, and his bills contain block-billed, duplicative, and vague entries, and reflect a lack of billing judgment.[10] In evaluating the reasonableness of George's request for attorney's fees, the Court will first determine the "lodestar" and then consider whether an upward or downward adjustment is warranted.

In calculating the lodestar, a court must determine the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). As the party requesting fees, George bears the burden of establishing the reasonableness of the fees he requests by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012). "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections." *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). The lodestar determination is presumed reasonable, but it may be adjusted upward or downward depending on the weight a court assigns to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[11]

---

[10] R. Doc. 160.

[11] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience,

George requests $371,600 in attorney's fees.[12] During the course of this litigation, George was represented by attorney Chris Edmunds, who logged 929 hours working on this matter between December 2023 and June 2026.[13] In support of the requested amount, George submits the declaration of Edmunds,[14] along with detailed billing records, which include summaries of the fees he incurred in connection with the case.[15] According to Edmunds's declaration, George seeks to recover for services performed by Edmunds, a solo practitioner with nine years of legal experience at the time of trial.[16] Edmunds has been licensed to practice law in Louisiana since 2017.[17] Beginning in 2017, he served as a term judicial law clerk for three different federal judges (2017-2020), and then opened his own practice in August 2020, specializing in disability rights litigation.[18] In his declaration, Edmunds recounts his experience in representing disabled persons and his participation in bar activities.[19] He explains that he has one legal assistant who dedicated a substantial amount of time to the case, including over 50 hours during the week of trial.[20]

---

reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. Fifth Circuit precedent indicates that "a fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case," which in this case included Louisiana law as well as federal law. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "In Louisiana, the amount of an attorneys'-fees award is governed by Rule 1.5 of the Rules of Professional Conduct." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *State Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 442 n.9 (La. 1992)). The Louisiana supreme court has derived ten factors (the "*Williamson* factors") from Rule 1.5 that courts applying Louisiana law must consider to determine the reasonableness of attorney's fees: "(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge." *Williamson*, 597 So. 2d at 442. The *Williamson* factors, however, "are very similar to those used in the federal 'lodestar' method as set out in *Johnson*." *Chevron USA*, 689 F.3d at 505. Because the parties here briefed the issue using the federal lodestar framework, applying "factors essentially identical to those required by Louisiana law," *id.* at 506, the Court will likewise use the federal lodestar framework to determine the reasonableness of George's request for attorney's fees.

[12] R. Doc. 152.
[13] R. Docs. 152-1 at 1; 152-4.
[14] R. Doc. 152-3.
[15] R. Doc. 152-4.
[16] R. Doc. 152-3 at 2-5.
[17] *Id.* at 2.
[18] *Id.*
[19] *Id.* at 2-3.
[20] *Id.* at 3-4.

Edmunds states that he usually works on a contingency fee basis.[21]  However, he also declares that he occasionally represents parents in education disputes against public schools at a rate of $300 per hour, which he says is a significant discount from "the rate [he] could command for [his] services," but the reduced rate reflects his commitment to protecting the rights of special needs children.[22]  Edmunds claims that he "turned down at least five meritorious representations because of this matter" for which he could "have earned between $200,000 to $800,000 if he had been free to dedicate the [time] spent on this case to other matters."[23]  George recognizes that other courts have found $350 per hour to be a reasonable fee for attorneys with experience similar to Edmunds's, but he argues that $400 per hour is more appropriate here considering Edmunds's clerkship experience and specialization in disability law, coupled with "record inflation."[24]

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *Martinez v. Refinery Terminal Fire Co.*, 2016 WL 4594945, at *7 (S.D. Tex. Sep. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328).  Here, Hobby Lobby contests the billing rate of George's lawyer, taking issue with the adequacy of Edmunds's declaration submitted in support of the rate, the lack of any other supporting evidence, and the excessiveness of the requested rate in light of certain case law.[25]  While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (observing that "the burden is on the fee applicant to produce satisfactory evidence – in addition

---

[21] *Id.* at 4.

[22] *Id.* at 4-5.

[23] *Id.* at 5.

[24] R. Doc. 152-1 at 3-7.

[25] R. Doc. 160 at 4-6.  Hobby Lobby mistakenly states that George does not offer affidavits from any other attorney, *id.* at 4-5, when, if fact, he does offer the declaration of one New Orleans employment attorney who pronounces, without citation to any other authority, that the "proposed rate of $400 per hour is a reasonable rate."  R. Docs. 152-7; 167 at 1.

to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Hobby Lobby asks that the Court set the hourly rate of George's attorney in this case at somewhere between $250 and $300 per hour, arguing that Edmunds has practiced disability law for only six years and has not shown that he should receive a premium of $50 per hour.[26]  Thus, the question here is whether Edmunds's requested rate – $400 per hour[27] – falls within the range of prevailing market rates for a similarly situated attorney.  "As recognized by … this Court, 'prevailing market rates in this community generally range from $200 to $400 per hour depending on the attorney's level of experience.'" *MGMTL, L.L.C. v. Strategic Tech. Inst., Inc.,* 776 F. Supp. 3d 419, 446 (E.D. La. 2025) (alteration omitted) (quoting *Nelson v. Constant,* 2021 WL 76407, at *3 (E.D. La. Jan. 8, 2021)).  Edmunds's requested hourly rate falls outside the range of rates allowed by other courts in this district for roughly equivalent experience.  *See, e.g.*, *Heath v. Gulf Island Fabrication, Inc.,* 2025 WL 2799046, at *2 (E.D. La. Oct. 1, 2025) (finding hourly rate of $350 for attorney with over 10 years of experience to be reasonable); *Montgomery v. Anderson,* 2025 WL 3179179, at *3 (E.D. La. Sep. 30, 2025) (finding hourly rates of $340 for attorney with 12 years of experience and $275 for attorney with over 5 years of experience to be reasonable), *adopted,* 2025 WL 3002132 (E.D. La. Oct. 27, 2025); *Archer W. Contractors, L.L.C. v. McDonnel*

---

[26] R. Doc. 160 at 4-6.

[27] Edmunds indicates that "$350 is a reasonable rate for attorneys with [his] years of experience," R. Doc. 152-1 at 3, but he seeks an additional $50 as a premium for his specialization in disability law.

*Grp., L.L.C.,* 2025 WL 2088911, at *4-6 (E.D. La. July 9, 2025) (finding hourly rates of $345 for attorney with 30 years of experience, $280 for attorney with 8 years of practice, and $240 for attorney with 4 years of practice to be reasonable); *MGMTL,* 776 F. Supp. 3d at 480-81 (finding hourly rates of $275 for attorney with 11 years of experience and $200 for attorney with 0-3 years of experience to be reasonable); *LaShip, L.L.C. v. Jamestown Metal & Marine Sales, Inc.,* 2025 WL 1370441, at *2 (E.D. La. May 12, 2025) (finding hourly rates of $370 for partner with 12 years of experience and $300 for associate with 7 years of experience to be reasonable); *Grant v. Gusman,* 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023) (finding hourly rates of $275 for an attorney with 11 years of experience and $200 for associates with up to 4 years of experience to be reasonable); *Kenai Ironclad Corp. v. CP Marine Servs., LLC,* 2022 WL 3223990, at *4 (E.D. La. July 21, 2022) (finding hourly rate of $290 for attorney with 14 years of experience to be reasonable); *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.,* 2021 WL 5833967, at *4-5 (E.D. La. Dec. 9, 2021) (finding hourly rate of $350 for partner with between 13 and 16 years of experience to be reasonable); *M C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (finding hourly rates of $350 for partner/member with over 17 years of experience and $225 for associate with approximately 3 years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (finding hourly rates of $300 for partners and $225 for associates to be within the customary range of rates in the New Orleans area). But, considering the foregoing authorities, the Court also finds that the rates Hobby Lobby suggests are too low for this case. Accordingly, the Court fixes the reasonable hourly rate of George's attorney for purposes of this case at $325, which accounts for Edmunds's years of experience, his concentration

8

in disability law,[28] and any inflation adjustment warranted by the dates of the cases reviewed above.

As for the time expended, courts consider whether the time entries in the billing records reflect a sufficient description and level of detail about the number of hours charged and the nature of the services rendered as would support a conclusion that the hours, or some part of them, were reasonably expended and the services reasonably rendered.  "The [fee] applicant should exercise 'billing judgment' with respect to hours worked … and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437 (internal citation omitted).  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment.  *Id.*; *Kellstrom*, 50 F.3d at 324.

Here, George states that his lawyer reasonably expended 929 hours on this case and exercised billing judgment to ensure that the fees were not excessive.[29]  He points to various techniques his lawyer employed to keep the fees low, such as not billing for clerical work or seeking reimbursement for work performed by Edmunds's legal assistant.[30]  George further argues that Hobby Lobby drove up the fees with a "tenacious" approach to the litigation and refusal to settle.[31]  George asserts that 929 attorney hours is reasonable in comparison to other disability cases where courts found larger amounts of time to be reasonable.[32]

---

[28] The Court finds that no premium in the hourly rate is merited for Edmunds's specialization because at the time of trial his trial experience was limited.

[29] R. Doc. 152-1 at 8-18.

[30] *Id.* at 13-14.  In addition, George does not see reimbursement for the time his attorney spent drafting the instant motion for attorney's fees.  *Id.* at 14.

[31] *Id.* at 8-9, 11-13.

[32] *Id.* at 8-11.

In response, Hobby Lobby argues that Edmunds failed to exercise billing judgment, pointing to what it says are block-billed, vague, and duplicative time entries, clerical and administrative tasks, and travel time billed at a full rate.[33]  It also argues that Edmunds's "own "aggressive" and "contentious" tactics unnecessarily increased the costs.[34]  As examples, Hobby Lobby cites Edmunds's billing $13,368 to prepare what it calls an "unnecessary" opposition to its routine motion for extension of time and his charging $20,796 to "unsuccessfully" oppose a motion to compel that was necessitated by his failure to answer discovery.[35]

George replies that Hobby Lobby fails to identify any "impermissible" block-billing or vague time entries, redundant or excessive hours, clerical tasks, or inappropriate travel time.[36]  He also argues that he did succeed to a significant degree on the two motions Hobby Lobby cites as examples of unnecessarily protracted litigation.[37]

Having carefully reviewed the billing records, as well as the parties' submissions concerning specific entries, the Court can certainly confirm both sides' contention that the way the case was litigated caused them to expend excessive and unnecessary attorney hours on the case. George essentially asks Hobby Lobby to bear the full brunt of this cost, when fairness dictates that both sides should swallow at least a part of their own share of the cost for this overly contentious conduct, meaning, for present purposes, there should be some reduction in George's requested hours.  Further, Hobby Lobby's contention that Edmunds failed to exercise billing judgment has some force.  There is a modicum of block-billing and inappropriate billing for travel time, and there are a few vague or clerical-like entries.  More problematic are the excessive hours written

---

[33] R. Doc. 160 at 9-13.
[34] *Id.* at 2, 13-14.
[35] *Id.*
[36] R. Doc. 167 at 7-8, 10-12.
[37] *Id.* at 9-10.

for legal research and the preparation and review of motions, discovery, and other filings. The hours logged show no sign that Edmunds's concentration in disability law yielded any efficiency in completing these litigation tasks. And while the Court credits Edmunds's restraint in writing up the time of his legal assistant, George's lawyer points to no instance in which he has written off any of his own time to account for the excessive hours noted here. Thus, the Court finds that a 15% reduction is warranted for this billed time and the lack of billing judgment. This adjustment reduces George's 929 claimed hours to 790.

Hobby Lobby argues that the Court should further reduce George's requested hours (and resulting fees) based on the *Johnson* factors since George had relatively limited success on his claims and his time entries do not differentiate between claims.[38] Hobby Lobby contends that George may recover attorney's fees solely for his successful claim (*i.e.,* his less-favorable-treatment claim) because all three of the claims he pursued (according to Hobby Lobby, a negligence claim and a failure-to-accommodate claim, as well as the less-favorable-treatment claim) involved different facts, evidence, and defenses.[39] Specifically, Hobby Lobby says that George requests $371,600 in attorney's fees, or about 37.16 times the amount he was awarded in damages ($10,000), making his fee request "grossly disproportionate to the results obtained" and warranting a reduction.[40] Hobby Lobby submits that Edmunds's hours should be reduced from 929 to 309.95 hours, "reflecting a 2/3 reduction to reflect [George's] limited success on only one of his three claims."[41]

---

[38] R. Doc. 160 at 6-9.
[39] *Id.*
[40] *Id.* at 8.
[41] *Id.* at 9.

In response, George contends that it is of no moment that he recovered only $10,000 because he also obtained injunctive relief and vindicated important civil rights.[42]   He also argues that a reduction is unwarranted considering that this is a case of first impression because "[n]o other court has considered the question of whether a retail store violates the law when it calls the police on a customer who is requesting a disability accommodation of tallying items," Edmunds turned down other work to pursue this case, Edmunds specializes in disability law, and the case was undesirable to most attorneys.[43]   George insists that he prevailed on two of his three claims (as he frames it, the ADA and LHRA claims, but not the negligence claim), even if not on both theories he advanced for these claims (as he frames it, the failure-to-accommodate and less-favorable-treatment theories).[44]   And, says George, no reduction in the requested fees for lack of success is warranted because the claims he pressed involved "related legal theories" with "a common core of facts" – that is to say, the factual underpinning of any of his unsuccessful claims was essentially the same as that of his successful claims.[45]

The Fifth Circuit instructs that, "in considering whether to decrease the lodestar, the district court *must* consider the plaintiff's degree of success." *Combs v. City of Huntington,* 829 F.3d 388, 395 (5th Cir. 2016) (emphasis added).  And it joins the Supreme Court in observing that "'the most critical factor' in determining a reasonable fee 'is the degree of success obtained.'"  *Id.* at 392 (quoting *Hensley,* 461 U.S. at 436).  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley,* 461 U.S. at 440.

---

[42] R. Doc. 152-1 at 15-16.
[43] *Id.* at 16-18.
[44] R. Doc. 167 at 5-6.
[45] *Id.* at 4-5.

George was the prevailing party on only one of the two claims tried to verdict: he obtained a favorable verdict on his LHRA less-favorable-treatment claim, but not on his LHRA failure-to-accommodate claim.[46]   The jury awarded a quite modest amount of damages ($10,000), notwithstanding the request of George's counsel in closing argument for $447,477.50 in total damages.[47]   Moreover, George had dismissed his negligence claim prior to the close of the case. And, while George did secure a court-awarded injunction after the trial, the relief obtained was only a small part of what he requested.  On the whole, then, George's success was quite limited. Thus, the Court agrees that there should be a downward adjustment for George's lack of success on some of his claims, although not to the two-thirds degree Hobby Lobby suggests.  That is because, in pressing his less-favorable-treatment claim, George had to present much (but not all) of the same evidence he urged as support for his unsuccessful failure-to-accommodate claim. Nevertheless, because a substantial part of the attorney's fees requested was devoted to the pursuit of the failed claims, the Court finds that a downward adjustment of roughly half (50%) is appropriate, thereby making the award for attorney's fees more in line with George's relative success.  This adjustment further reduces George's 929 claimed hours from the 790, to which they were previously adjusted, to 395.

Multiplying the adjusted hourly rate by the adjusted hours of George's attorney – $325 per hour x 395 hours – the Court finds that the adjusted lodestar for attorney's fees is $128,375. Having made the foregoing reductions and having determined that no additional adjustments are warranted by any other *Johnson* factors, the Court finds that this award of attorney's fees is both reasonable and appropriate to the case.  That the resulting amount exceeds the amount George recovered on his claims is of no moment because the award of attorney's fees in the Fifth Circuit

---

[46] R. Doc. 126.
[47] R. Doc. 139 at 30-31.

13

is not governed by any rule of strict proportionality to the damages recovered. *See, e.g., Badon v. Berry's Reliable Res., L.L.C.,* 2025 WL 2206972, at *4 (5th Cir. Aug. 4, 2025) ("[W]hile 'proportionality is an appropriate consideration' in assessing fee awards, we have 'consistently emphasized that there is no *per se* requirement of proportionality in an award of attorney's fees." (internal citations and quotation marks omitted) (quoting *Gurule v. Land Guardian, Inc.,* 912 F.3d 252, 259 (5th Cir. 2018))).

III.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that the amount of the attorney's fees awarded to George is hereby fixed in the amount of $128,375.

New Orleans, Louisiana, this 29th day of July, 2026.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE